BANK OF TORONTO v. THE MANUFACTURERS' AND MERCHANTS' FIRE ASSOCIATION OF NEW JERSEY AND CHARLES W. McMURRAN.

Argued November 1, 1898—Decided February 27, 1899.

1. On a policy of insurance issued by an unincorporated association organized and doing business under the statutes of this state (*Gen. Stat.*, *p.* 1784; *Pamph. L.* 1896, *p.* 156; *Id.* 1897, *p.* 152), in which policy the individual underwriters contract separately for a definite proportion of the loss, an action may be maintained against the association by its recognized name, by virtue of the supplement to the Practice act approved May 23d, 1890.
2. A person who in such a policy appears to be merely the attorney of the underwriters is not suable in an action on the policy, even though the policy provides that he may be sued on the contract of his principals.
3. In case a demurrer be filed to a declaration on contract, but no notice of objection for misjoinder of defendants be given pursuant to section 38 of the Practice act, the plaintiff's action will not be wholly defeated, as at common law, because of such misjoinder, but he will be entitled to judgment against the defendants who are legally responsible on the cause of action

On contract.

The defendants demur to the following declaration :

Hudson county, *ss.*—New Jersey Supreme Court. As yet of the Term of February, A. D. eighteen hundred and ninety-eight. The Manufacturers' and Merchants' Fire Association of New Jersey, an unincorporated association consisting of more than two persons united together for business purposes

and having a recognized name, to wit, the name aforesaid, and Charles W. McMurran, as attorney for the underwriters composing said association, the defendants in this action, were summoned to answer unto the Bank of Toronto, a corporation of the Dominion of Canada, the plaintiff therein, in an action upon contract, and thereupon the plaintiff, by Corbin & Corbin, its attorneys, complains for that whereas, heretofore, to wit, on the seventeenth day of November, eighteen hundred and ninety-six, to wit, at Jersey City, in the county of Hudson, the Manufacturers' and Merchants' Fire Lloyds of New Jersey, being an association under what is known as a Lloyd association, composed of not less than twenty members, associated together for the purpose of underwriting and contracting and issuing policies of insurance and insuring property against direct loss or damage by fire or lightning upon what is known as the Lloyds plan, for the consideration of thirty-two dollars and fifty cents, paid to them by the John Eaton Company, Limited, and in consideration of the stipulations therein named, did write and issue their certain policy of insurance bearing date the day and year last aforesaid, whereby the firms and individuals composing said association last named as separate underwriters, each represented by and acting through Charles W. McMurran, of the city of Newark, in said policy called the attorney of the underwriters, did agree to insure the separate amounts placed after their names respectively:

| | | | |
|---|---|---|---|
| Wm. A. Halsey | $125 00 | Andrew McLean | $125 00 |
| George E. Halsey | 125 00 | Daniel C. Case | 125 00 |
| Geo. A. Helme | 125 00 | Richard Morrell | 125 00 |
| John S. Silvers | 125 00 | Chas. J. Carpender | 125 00 |
| Sheffield Phelps | 125 00 | John J. Phelps | 125 00 |
| John W. Herbert, Jr. | 125 00 | Hayward A. Harvey, | 125 00 |
| Samuel K. Wilson | 125 00 | Wm. H. Rockfellow | 125 00 |
| John Kean | 125 00 | John N. Carpender | 125 00 |
| Hamilton F. Kean | 125 00 | Wm. E. D. Stokes | 125 00 |
| H. C. Perrine | 125 00 | H. E. Deats | 125 00 |

And did separately in said amounts insure the said The John Eaton Company, Limited, for the term of one year from the sixteenth day of November, eighteen hundred and ninety-six, at noon, to the sixteenth day of November, eighteen hundred and ninety-seven, at noon, against all direct loss or damage by fire to the property therein mentioned, except as therein provided, to an amount not exceeding in the aggregate the sum of twenty-five hundred dollars nor exceeding the interest of the assured in said property while located and contained as described in said policy, to wit:

" $2,500.    On their stock of dry goods, clothing, woolens, trimmings, furnishings, hats, caps, furs, carpets, floor coverings, boots and shoes, housefurnishings, groceries, provisions, crockery, glass, tinware, toys, furniture, books and stationery, drugs and druggists' sundries, woodenware, millinery and mantles, jewelry and silverware, cigars and tobaccos and all general merchandise and such goods as are usually kept for sale in department stores, owned by assured, and including goods sold and not delivered and goods on consignment and while contained in the four-story brick and gravel-roofed building situate on the southwest corner of Temperance and Yonge streets, Toronto, Canada."

And it was in and by said policy, which was numbered 2185, and by a so-called seventy-five per cent. co-insurance clause thereto attached, agreed in consideration of said premium that in the event of loss the underwriters should be liable for no greater proportion thereof than the sum thereby insured should bear to seventy-five per cent. of the cash value of the property described therein at the time when such loss should happen, nor more than the proportion which said policy should bear to the total interest.

And it was therein provided that the underwriters should not be liable beyond the actual cash value of the property at the time any loss or damage should occur, and the loss or damage should be ascertained or estimated according to such actual cash value, and should in no event exceed what it would then cost the insured to repair or replace the same with

material of like kind and quality; said ascertainment or estimate should be got by the insured and the said attorney, or if they differ, then by appraisers; and the amount of loss or damage having been determined, the sum for which the underwriters are liable pursuant to the policy should be payable sixty days after due notice, ascertainment, estimate and satisfactory proof of the loss should have been received by the attorney in accordance with the terms of the policy. It should be optional, however, with the attorney to take all or any part of the articles at such ascertained or appraised value and also to repair, rebuild or replace the property lost or damaged with other of like kind and quality within a reasonable time on written notice, within thirty days after the receipt of the proof required, of his intention so to do.

And it was in said policy further provided that the insured should give immediate notice in writing of any loss by fire to the said attorney, forthwith separate the damaged and undamaged property and make a complete inventory of the same, stating the quantity of each article and the amount claimed thereon, and within sixty days after the fire should render a statement to the attorney, signed and sworn to by the insured, stating the knowledge and belief of the insured as to the time and origin of the fire, the interest of the insured and of all others in the property, the cash value of each item thereof and the amount of loss thereon, all encumbrances thereon, all other insurance covering any of said property, and a copy of all the descriptions and schedules in all policies, and changes in the title, use, occupation, location, possession or exposures of the property since the issuing of the policy.

And it was further therein agreed that the same should be ascertained by two competent and disinterested appraisers, the insured and the attorney each selecting one, and the two so chosen should select a competent and disinterested umpire, by whom the loss should be ascertained.

It was therein further agreed that further concurrent insurance upon said property was permitted by the insurer and could be effected without notice to the defendant until defendant should require such notice.

And it was further therein agreed that the insurers should not be liable for a greater proportion of any loss than the amount by said policy insured should bear to the whole insurance covering said property, and that no suit or action on said policy for the recovery of any claim should be sustainable until after full compliance by the insured with the foregoing requirements, nor unless commenced within twelve months after the fire. And further, that the word "insured" in said policy should be held to include the legal representatives of the insured, and the word "loss" should be deemed the equivalent of loss or damage.

And it was further therein agreed that in the event of litigation upon said policy no action, suit or proceeding should in any event be begun or maintained to enforce the provisions of said policy against the individual underwriters thereon, or any of them, until after suit should have *been brought against the said attorney* for the underwriters and for the full amount of the loss or claim, or full and complete relief claimed under said policy, and that each of said underwriters thereon agreed to abide the final determination of any such action, suit or proceedings so brought as fixing the individual responsibility under said policy, and that judgment in such action entered against said attorney as trustee for the underwriters should be satisfied out of the trust fund in the hands of the attorney, and that if such trust fund should be insufficient to satisfy the judgment then the insured might begin and maintain actions against the said individual underwriters upon their liability under said policy and upon their agreement to abide the final determination of any suit brought against the attorney as aforesaid.

And the plaintiff avers that in the year eighteen hundred and ninety-seven the said association known as the Manufacturers' and Merchants' Fire Lloyds, acting under authority of chapter 76 of the laws of New Jersey of the year 1897, being an act approved April 3d, 1897, changed the name of said association to the Manufacturers' and Merchants' Fire Association of New Jersey, the defendant in this action, by which name it is now known and called.

And the plaintiff avers that on the twentieth day of May, 1897, while the said policy was in full force, all the said stock of dry goods, clothing, woolens and other property above described, were destroyed by fire, saving and excepting a portion thereof of the value of one thousand dollars; that said insured property at the time of such fire was of the actual cash value of two hundred and seventy-eight thousand four hundred and sixty-eight dollars and forty-three cents ($278,468.43), and that the loss occasioned by such fire was two hundred and seventy-seven thousand three hundred and sixty-eight dollars and forty-three cents ($277,368,43); and the plaintiff avers that at the time of the happening of said fire as aforesaid the total insurance upon the said property was the sum of two hundred and nineteen thousand five hundred and forty dollars ($219,540), being more than seventy-five per cent. of the actual cash value of such property; the plaintiff avers that immediately upon the happening of said fire notice thereof was given by the said insured to defendant, and within sixty days after the happening of said fire, to wit, on the second day of June, A. D. 1897, said insured made and delivered to defendant, upon oath, written proofs of said loss in form and manner as required by the terms of said policy as is above set. forth, and that the said insured, the John Eaton Company, Limited, duly performed all conditions and requirements precedent to its right of recovery upon the said policy, to wit, at Jersey City, in the county of Hudson aforesaid.

And the plaintiff avers that said amount of loss which has occurred does not exceed the actual cash value of said property with the proper deduction for its depreciation, and does not exceed what it would have cost the insured at the time of the fire to repair or replace the same with material of like kind and quality. And the plaintiff avers that the insured caused the amount of said loss to be carefully ascertained and determined on the second day of June, 1897, and that the defendant refused to appoint an appraiser to ascertain the same as is provided in said policy; and plaintiff avers that

at the time of said fire there was further concurrent insurance upon said property, which, with the amount of the policy above mentioned, aggregated in all the said sum of two hundred and nineteen thousand five hundred and forty dollars ($219,540), and that due notice was immediately given to the defendant as required by the policy.

And the plaintiff says that by reason of the premises the defendant became liable to pay to said insured sixty days after such due notice, ascertainment, estimate and proof of loss were received by the defendant, to wit, on the first day of August, 1897, the amount of all loss and damage occasioned by said fire to the extent of the amount of said policy, to wit, the sum of twenty-five hundred dollars, when he should be thereunto afterwards requested.

And the plaintiff in fact says that on the twenty-second day of May, 1897, the said insured, the John Eaton Company, Limited, for divers good and valuable considerations thereunto moving and of one dollar, did transfer, assign and set over unto the plaintiff, its successors and assigns, all its right, title and interest in the said policy of insurance and all interest and benefit to be derived therefrom, of which the defendant then at Jersey City had notice, and the defendant then and there became indebted to the plaintiff and liable to pay to the plaintiff the said sum of twenty-five hundred dollars, and being so liable and indebted, the defendant, in consideration of the premises, afterwards, on the second day of August, 1897, at Jersey City, promised to pay to the plaintiff said sum of twenty-five hundred dollars, parcel of the said sum of five thousand dollars above demanded, when the defendant should be thereunto afterwards requested.

Before MAGIE, CHIEF JUSTICE, and Justices GARRISON and DIXON.

For the demurrants, *Colie, Swayze & Titsworth.*

For the plaintiffs, *Corbin & Corbin.*

The opinion of the court was delivered by

DIXON, J.    This declaration does not disclose a right of action against McMurran.    He is not a party to the contract set forth, nor are any circumstances alleged out of which a personal liability on his part arises.    If it were averred that he held in trust a fund delivered to him by the underwriters for the payment of such claims as that of the plaintiff, no doubt he would be suable in equity for the enforcement of the trust, and perhaps he might be suable at law for so much money had and received to the plaintiff's use.    But no such averment is properly made, and if it were it could only show a liability entirely distinct from that of the other defendant. His liability to the present action is rested solely on his being the attorney of the underwriters and the implication in the policy that as such attorney he may be sued on the contract of his principals.

But we think it is not within the power of parties thus to change the rules of legal procedure.    The law indicates who may be sued on the contracts of private persons, and in that law no provision exists for suing an attorney on the obligation of his principal.    On this theory rest the decisions in *Hybart* v. *Parker*, 4 *C. B.* (*N. S.*) 209; *Gray* v. *Pearson*, *L. R.*, 5 *C. P.* 568; *Evans* v. *Hooper*, 1 *Q. B. D.* 45; *Knorr* v. *Bates*, 35 *N. Y. Supp.* (*C. P.*) 1060; *Farjeon* v. *Fogg*, 37 *N. Y. Supp.* (*S. C.*) 980; *Ralli* v. *White*, 47 *Id.* 197.

A right of action against the Manufacturers' and Merchants' Fire Association of New Jersey is shown.    The declaration avers that that body is an unincorporated association of more than two persons united together for business purposes and having a recognized name, and that it issued the policy on which the suit is brought.    The supplement to our Practice act approved May 23d, 1890 (*Gen. Stat.*, *p.* 2592), enacts that such an association may be sued by its recognized name "in any action affecting the common property or the joint rights and liabilities of such association," and "that, when judgment shall be obtained against the defendant in such suit, execution may issue thereon in the same manner as executions now issue

on judgments against corporations; and the sheriff or other officer may, by virtue of such execution, levy upon and expose to sale all the common property of such association not by law exempt from sale under execution, whether the same be held in the name of such association or by the directors, stockholders or trustees thereof in trust for such association."

These provisions are remedial, and therefore should receive a liberal construction. The expression " in any action affecting the common property " should be construed to mean " in any action legally capable of affecting the common property," whether through execution, as provided in the statute, or by establishing a debt which ought in equity to be paid out of the common property.

On the face of the declaration it appears that this association is organized and doing business under the statutes of this state (*Gen. Stat.*, p. 1784; *Pamph. L.* 1896, p. 156; *Id.* 1897, p. 152), and according to those laws it should have on hand, in cash or securities, a fund of not less than $40,000 for the protection of policy-holders. This fund, if it exists, is the common property of the association and may be in such form as to be salable under execution on judgment in the present suit, and if not will certainly be obtainable through proceedings in equity to enforce the judgment. These considerations suffice to render this action one " affecting the common property" within the intent of the statute. Although the declaration does not distinctly aver that there is such a fund, yet, as the association is required by law to have such a fund, and the legitimate object of the suit is to reach it if it exists, its non-existence ought not to be presumed in order to defeat the suit, although the object of the suit may finally be thwarted, a result possible in most litigation.

The case presented, therefore, is one of misjoinder of defendants in an action on contract.

Assuming that on demurrer such a declaration would be fatally defective at common law, section 38 of our Practice act (*Gen. Stat.*, p. 2539) provides that the misjoinder shall · not be objected to on the trial of the cause unless the defend-

ant, within five days after filing his plea or demurrer, give written notice to the plaintiff of such intended objection. Such notice was not given, and we must consider what judgment should now, in the absence of notice, be rendered.

The argument of the demurrer must be deemed *a trial of the cause*, otherwise the statute cannot operate, as it evidently was intended to do, when a demurrer is filed.

According to the words of the act, the misjoinder cannot now be objected to. In *Patterson* v. *Loughridge*, 13 *Vroom* 21, this court held the meaning of the statute to be that the common law advantage resulting to the defendant should not be taken, but that the plaintiff should be permitted to maintain his action against any of the defendants whose liability was shown. At common law the effect of misjoinder apparent on the face of the declaration would be to entitle all the defendants to judgment on demurrer. Under our statute the effect is that the plaintiff is entitled to judgment against the defendant who appears to be chargeable, but not against the defendant who appears to be not chargeable.

Let judgment be entered for the plaintiff against the association and for McMurran against the plaintiff.